# United States District Court
## Eastern District of California

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL COMPLAINT** |
| **V.** | |
| **MARIGRACE FRENCH RATHCKE** | **DOCKET NUMBER:** 6:23-mj-00001-HBK |

I, **Heidi L. Edgecomb,** Law Enforcement Park Ranger, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. In Yosemite National Park, in the Eastern District of California, **Marigrace French RATHCKE** did or was:

**Count 1:** Present in a park area when under the influence of alcohol or a controlled substance to a degree that may endanger oneself or another person, or damage property or park resources in violation of Title 36 Code of Federal Regulations § 2.35(c)
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

**Count 2:** Possess a controlled substance in violation of Title 36 Code of Federal Regulations § 2.35(b)(2)
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

**Count 3:** Under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that rendered the operator incapable of safe operation, in violation of Title 36 Code of Federal Regulations § 4.23(a)(1)
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

**Count 4:** Operate a motor vehicle without due care or at a speed greater than that which is reasonable and prudent considering wildlife, traffic, weather, road, and light conditions and character, in violation of Title 36 Code of Federal Regulations § 4.22(b)(1)
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

**Count 5:** Fail to maintain that degree of control of a motor vehicle necessary to avoid danger to persons, property, or wildlife, in violation of Title 36 Code of Federal Regulations § 4.22(b)(3)
**Maximum penalty: 6 months imprisonment and/or $5,000 fine**

I further state I am a commissioned Law Enforcement Officer with the National Park Service. This complaint is based on the following facts and information observed by me and or provided to me by other National Park Service Law Enforcement Rangers.

At approximately 5:15 AM on January 4, 2023, I was notified by pager of a motor vehicle accident at Wawona Chevron. The report stated a vehicle was on its side in the road with a female occupant inside and unable to get out. I responded from my home and arrived on scene at 5:28 AM. Yosemite Fire was on scene and conducting traffic control. I saw a blue-gray Subaru station wagon with CA registration 7PJF411 resting on the passenger's side immediately in front of the Wawona Chevron gas station. Yosemite Fire personnel were on scene and advised the driver was Marigrace RATHCKE, a long time Wawona Resident. They advised she was uninjured and was in the fire engine to stay warm. There were no identified witnesses to the accident. RATHCKE was the sole occupant of the vehicle.

At the time of this incident the pavement was wet, ambient temperatures in the mid-30's, clear sky weather, and darkness. There were no chain restrictions in effect at the time of this incident. Upon inspecting the vehicle and the scene, the initial impact point was the right front corner of the Subaru. This struck a 6x6 inch metal barricade post sunk into a concrete base through the asphalt surface of the gas station parking and marking a curbed median grassy area. After striking the post, the vehicle overturned onto the driver's side, rolled over side-to-side, and landed on the passenger side. The vehicle was parallel to the roadway, blocking both lanes. The rear hatch to the vehicle was open, and I was notified this is how a passer-by got RATHCKE out of the vehicle. Side curtain airbags had been deployed. Ranger Byron Webb responded with an ambulance to the scene.

I then contacted RATHCKE where she sat in the fire engine. I asked her what happened. RATHCKE said she was helping some friends move to their new house. I asked if those friends were in town and her answer was not complete. I asked what had happened and RATHCKE said she was "just trying to get home." I asked where she was helping to move people and she began to answer, then said "hold on a second" and tied her shoe.

She said her friends were moving to a different place and she "wanted to get back home." I asked where her friends were moving, asking if it was in town (Wawona) or Oakhurst or Fresno. She stopped seemed to be thinking for several seconds and then said "I'm trying to think." She began explaining again that "I helped them move their stuff today…" and continued to explain that she was trying to move her friends. I stopped her and asked again where her friends lived. She then said "I'm sorry, I still have problems with my head." I then named several close towns and she said "yeah, it was Oakhurst." I asked her what time she went to help her friends. She said "it was about 7 or 8 o'clock." I asked if that was last night or yesterday morning. She said "no, today." I asked her what day it was and she said "today is Tuesday." I told her it wasn't Tuesday. I asked her for the time and she said "4 o'clock" and I clarified if that was at night or in the morning and she said "in the morning." It was around 5:30 AM at the time.

Speedy Trial Act Applies: **No**　　　　　　　　　　　　　　　　　　　　　　　U.S. v. **RATHCKE**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Criminal Complaint

I asked RATHCKE what time she left Oakhurst. She began again explaining she had been helping a friend and began talking about going to Madera. I told her she wasn't making sense.   I asked her what time she had left Wawona to help her friends. She said she didn't leave Wawona, so I asked her where she had woken up yesterday.   She repeated: "when I woke up yesterday…" and didn't answer. I repeated the question.   She still couldn't answer and then became upset with me saying "I have concussions from when I…just give me a moment, please, Heidi." She then said "I'm trying to get my life together with my husband."   I attempted to explain that I was trying to determine if she needed an ambulance because she couldn't tell me the day or what happened. "Okay, then [unintelligible] no, let's go."   I continued to try to explain I was trying to figure out if she hit her head and needed to make sure she wasn't injured. She said "I didn't hit my head."

I asked "what happened today? What happened with the car accident."   RATHCKE then became sarcastic with me asking "will you let me speak?" I told her yes. She said "Oh you're pretty nice. That would be really nice."   She began again explaining she was visiting a friend, saying she went from "Highway 51 to the Madera turnoff to the Island." I told her I did not know where "the island" was. I asked if that was 7 or 8 o'clock yesterday morning. She said "Don't tell me what I know!" I told her she was incoherent. She said "no, I'm not." I told her I was trying to determine why her car was sideway in the road and she was telling me about moving her friends. I asked "why is your car sideways in the road right now?" She said "my friend came to the island in Madera. It's where the…" At this point I could not determine the cause of RATHCKE's difficulty explaining what happened and I requested Sierra Ambulance respond to further provide medical assistance.

I tried one more time to determine if RATHCKE was alert and oriented and knew what had happened that morning. RATHCKE became upset again, yelling at me. She yelled incomplete sentences. Each time I asked where she left from or what happened with regard to the accident she said she needed a minute to think. I told her to get her story straight and I would be back in a minute, saying the questions I was asking her were simple and I would ask anyone in an incident. She again became upset. She then said "I would like to have a lawyer." I asked why, and she said "because I don't want to talk to you Heidi. I don't want to talk to you. You're very difficult to talk to. You don't listen to me. You don't pay attention to what I'm trying to say to you" and that I wasn't paying attention to her. I told her I was listening and I asked her what happened that caused her car to be sideways in the road. She said "I fell asleep."

RATHCKE then again began saying "yesterday…" and explained about going to Madera and helping elderly friends. Ranger Webb arrived on scene and approached the door.   RATHKE stopped talking and looked at Ranger Webb, pointed at me and said "I was talking to her." She then asked me for water, which I didn't have any.   I asked her where she came from this morning. She said "I told you where I came from this morning."   I then asked Ranger Webb to try to get a clear course of the morning's events.

Ranger Webb advised me RATHCKE said she was coming from "the island" and had gone to sleep at 7 or 8:30 last night and she was driving home and trying to get to the post office to pick

Speedy Trial Act Applies: **No**    U.S. v. **RATHCKE**
    Criminal Complaint

up mail at Wawona Post Office.   I asked Ranger Webb if she had been able to answer person, place and time questions. He said she knew where she was coming from and where she was going but not what happened in the middle and that she had said the roads were snowy and icy and she had fallen asleep.

While I spoke with Ranger Webb RATHCKE began walking around the parking lot. She looked at Ranger Webb and asked if he understood what she had said. He asked her if she knew what day it was. She said "well, it's been a long holiday and I'm not really happy with it." She said "I believe that was yesterday" indicating New Year's.   RATHCKE then told me it was Wednesday and she had started her "quest" to get to the house at 4:30. I asked if she had left Madera at 4:30 and she said no, saying she left her friend at 4:30. She then said she "came up here" to "Evergreen Road." RATHCKE again began explaining about "the island." She again said "I don't want to talk to you anymore."   Ranger Webb and I attempted to get the course of events one last time and it was clear we couldn't get a coherent story from her.   This entire interaction lasted more than a half hour.

Sierra Ambulance arrived on scene and conducted an independent medical examination on RATHCKE. They advised me she had been in Merced and then went to "the island" which he was unfamiliar with as well, and that she had been in Coarsegold.   They found her able to make decisions and released her, but also could not make sense of her story.   The paramedic advised me she had denied using drugs but said she had possibly used some alcohol.

I have been involved in several previous incidents involving RATHCKE and know her to be addicted to alcohol and a user of methamphetamine. I know her to have convictions for possession of a controlled substance previously. I have interacted RATHCKE when she was under the influence of alcohol and/or drugs and I have also interacted with her when she is sober. I know she has tendency to become highly angry and volatile and displays varying moods when she is not sober. She was demonstrating this behavior.   Because of her incongruous story, her volatile mood, and the vehicle accident which had occurred despite good road conditions, I suspected RATHCKE was under the influence of drugs and/or alcohol.

When the tow truck righted the vehicle, I began a cursory search of it, looking for RATHCKE's driver's license. I saw a multi-colored fabric purse in the rear driver's side passenger seat. Upon opening the purse, I saw a gray fabric sunglass case which contained a glass pipe which I know is used to smoke illegal drugs. Ranger Webb conducted a thorough search of the vehicle and located a small, white, crystalline block of substance that resembled methamphetamine. The glass pipe contained white and burned residue which was consistent with use to smoke drugs, specifically methamphetamine. The crystalline substance was located in a plastic bag inside a small fabric bag in the bottom of the purse that held the pipe.

I found RATHCKE sleeping in a seat in the fire engine. I told her I needed her to move to my vehicle so the engine could go back in service. She moved very slowly and found her unsteady on her feet. She stumbled periodically. I asked if I could frisk her prior to placing her in my vehicle

Speedy Trial Act Applies: **No**   U.S. v. **RATHCKE**
Criminal Complaint

and she consented. In the short time I was frisking her she began shaking because of the cold. Because of her difficulty telling her story, her unsteadiness on her feet, her extreme reaction to the cold and her lack of willingness to comply with requests for information, roadside field sobriety tests were not performed.   Upon placing RATHCKE in my vehicle I was able to smell a vague odor alcohol on her breath.   When asked about her plan she said she did not have a car.   She could not provide any plan or solution to being stranded in the cold without a vehicle.   She declined having us call her husband who lives a few miles away in Wawona.

When I placed RATHCKE in the back of my vehicle she proceeded to lie down and fall asleep.

Based on the fact RATHCKE had driven her vehicle in a manner in which she failed to maintain control of it, causing property damage to her vehicle and the gas station property; her inability to explain the course of events leading up to the accident; her inability to determine a plan of action following this accident; the odor of alcohol on her breath; her possession of suspected methamphetamine and paraphernalia; it was my belief RATHCKE was under the influence of drugs and/or alcohol to a degree which made her a danger to herself, others, or the park.

Ranger Dillon O'Brien obtained a consensual blood draw from RATHCKE at 8:15 am. RATHCKE was arrested and transported to Mariposa County Jail.   Body worn camera footage available from Rangers Edgecomb and B. Webb.

I declare under penalty of perjury the information which I have set forth above and on the face of this criminal complaint is true to the best of my knowledge.

__1/4/2023_____  
Date

/s/ *Heidi L. Edgecomb*  
*Ranger Heidi L. Edgecomb*  
Law Enforcement Park Ranger  
Yosemite National Park, CA

Sworn to before me and subscribed in my presence in Yosemite National Park, California.

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed.R.Crim. P. 4.1 before me this __4th__ day of January, 2023.

  January 4, 2023  at 17:05  
Date

HELENA M. BARCH-KUCHTA  
UNITED STATES MAGISTRATE JUDGE

Speedy Trial Act Applies: **No**

U.S. v. **RATHCKE**  
Criminal Complaint